## REISER v. McKEE GLASS CO.
### Civil No. 82.

District Court, W. D. Pennsylvania.
Dec. 16, 1940.

260

ChristyChristy, Parmelee & Strickland, of Pittsburgh, Pa., and Robb & Robb, of Cleveland, Ohio, for plaintiff.

William B. Jaspert, of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

On February 20, 1934, Edward A. Reiser was granted Design Patent D–91,542, for an ornamental design of an "Egg Cup Having A Top". The claim was: "The ornamental design for an egg cup having a top, as shown." The drawing discloses a cup shaped like an egg with the top flattened, and having a skirt-shaped base and a flat top which had thereon a small handle, described as wing-shaped, of apparently the same material as the top. From the drawing it appears that the top was to be attached to the body of the cup by screw means.

In the spring of 1934 the patentee approached the defendant with a view to having it take out a license to manufacture the cup. At this time the patentee produced a metal model which differed from the patent drawing only in that the top was more dome-shaped than that of the drawing. The defendant was a manufacturer of glass utensils able to withstand heat. It could not make the cup in the patent form, and no agreement developed. A year later, however, plaintiff took a wooden model to the defendant which differed considerably from the patent. Instead of the solid skirt base it had three flanged toes and the flat metal cover had a non-metal handle attached to it. The cover was to be fastened to the body of the cup by interlocking means, and was not the screw top of the patent. The locking means was alleged upon trial, without denial, to have been the patent of a stranger to this case. It is of no moment herein, because, although forgotten at all times by the patentee and at frequent intervals by counsel during the trial, the patents involved in suit are not article patents, but ornamental designs for an egg cup. Neither of the patents undertook to set forth anything except the general appearance of the cup.

As stated, no cups were manufactured by defendant which were of the appearance of plaintiff's Design Patent D–91,542; and only a few were manufactured, and these sent to plaintiff, of those following plaintiff's model having a flat top and flaring flanged toes. It soon developed that the flanged toes of plaintiff's new model, and his flat top, caused manufacturing difficulties. The first defect was remedied by Louis Poglein, foreman of the mold shop of defendant. He modified plaintiff's proposed model construction by putting four straight toes as a base to the cup in the place of the three flaring flanged toes, thus making removal of the manufactured article from the mold much easier and so increasing speed of production.

The difficulty in respect to the flat top, as suggested by plaintiff, was submitted to the Ohio Lantern Company of Tiffin, Ohio, of which Charles S. Baron was the manager. He made a dome-shaped lid for the cup, which had a round, non-metal handle. This cover was attachable to the body of the cup very much as is the ordinary jelly glass cover to the glass, and not by the interlocking method advocated by Reiser's model exhibited prior to the defendant's letter of April 15, 1935, whereby it agreed to add to its products a cup made in accordance with plaintiff's patent. Subsequent to the letter of April 15, 1935, plaintiff and defendant entered into a formal agreement on January 16, 1936, and thereafter defendant manufactured and sold egg cups with the dome-shaped cover. On April 14, 1936, it notified plaintiff that it had changed the design of its egg cups, and, further, that its cup did not come within plaintiff's patent D–91,542.

Prior to the contract of January 16, 1936, defendant had not examined a copy of Design Patent D–91,542, and was under the impression, as quite evidently was plaintiff, that the patent was an article patent for an egg boiler with a cover. After the contract was executed a copy of the patent was submitted to it upon request, and in turn submitted to its counsel, who informed it that the cup being manufactured by it was not of the design covered by plaintiff's patent. Defendant, however, informed plaintiff that it would

continue to pay royalty unless or until competition developed. This it did until October 5, 1936, when it declared that competition existed and therefore it would cease payments.

Prior to the cessation of royalties each party got busy. The plaintiff, on April 22, 1936, and Louis Poglein, on behalf of defendant, on June 19, 1936, filed each an application for a design patent. Defendant's disclosed three short flanged toes as the base of the cup, and Poglein's four straight toes. The covers were identical, being the dome-shaped lids made by the Ohio Lantern Company, no method of attachment being given. An interference was declared, in which the controversy involved in the main the invention of the dome-shape of the cover and the handle thereon. The Patent Office, knowing nothing of the Ohio Lantern Company, very properly decided in favor of the plaintiff.

█ Plaintiff's Design Patent D–112,-846, was issued on January 3, 1939, after the present action was commenced, and has been incorporated herein by amendment of the Complaint. Had it not been brought into consideration, no difficulty in respect to a decision would exist. The defendant never has manufactured an egg cup which even a careless observer would mistake for one formed after plaintiff's design in its patent D–91,542. That patent, as stated, discloses an egg cup with a comparatively long skirt shaped base, and with a flat top having a small rectangular metal handle. The manufactured cup had a short base of four straight feet, and a dome-shaped lid with a round wooden knob handle.

█ The design of Patent D–112,846 differs from the cup manufactured by defendant only in that it shows three flanged feet in the place of four straight ones. Assuming the immateriality of this variation, the only question relates to the cover and its inventor. It is definitely stated on behalf of defendant that no egg cups such as theretofore manufactured by defendant were put out by it after notification by plaintiff of the issuance of Patent D–112,846. But irrespective of this fact as matter tending to defeat plaintiff's claim, the court is unable to find that the design of that patent is the invention of the plaintiff. The conclusion to be drawn from the evidence, it seems plain, is that the design is one which had its origin in manufacturing difficulties and needs.

Ignoring Poglein's feet for the cup, Baron provided the cover, and beyond the feet and the cover only an ordinary jelly glass appears. The ultimate design used had its origin in attempts to improve plaintiff's impractical Design Patent D–91,542, but improvements so attained cannot take the place, and constitute infringements, of the patent itself when the patent design and the improvements vary so widely as in the instant case.

Plaintiff's complaint must be dismissed